Revised / Ammended

United States District Court
District of Connecticut
FILED AT   HARTFORD

July 7                  2020
Robin D. Tabora, Clerk
By _____
Deputy Clerk

D Cause of Action

I provide the following particulars:

1.  My name is Krystal Underhill and I reside at 1029 Main Street, Stratford, CT 06615.
2.  The respondent is Yale University located in New Haven, CT.
3.  Respondent employs more than fifteen (15) employees.
4.  I began my employment with the respondent in October 2015.
5.  My position was professional revenue analyst and my work location was on George Street in New Haven until in or about July 2017 when a reorganization took place.
6.  I was reassigned to an office located on Church Street South in New Haven within the medical coding and billing department. Management changed and I began reporting to Teresa Carty.
7.  In September 2017, I met with Carty to discuss concerns I had with the dynamics of the team and what my role was within the department.
8.  Prior to Carty becoming my supervisor, I had no documented performance or conduct issues as an employee.
9.  In early 2018, things became increasingly hostile in the department.
10. Carty accused me of being angry and accused me of staring at her.  When I denied I was staring at her and said I was listening to her, she argued that I was intentionally staring at her as a means of intimidating her.
11. On February 21, 2018, Carty called me in regarding personal time off (PTO) requests. Specifically, I had requested February 22 and 23, 2018 off because I had received surprise tickets for my birthday on February 21, 2018.
12. Carty said the training was scheduled for the clerical and technical staff that she wanted me to participate in on those days.
13. I informed her I would take the time regardless of her approval.
14. She then said she would talk to the George Street office to see if the training could be done that day.
15. Carty said the training could happen that day and I explained I had another meeting.
16. She told me she would drag me there if need be.
17. She wanted me to walk over to George Street with her and I responded I knew how to get there, while standing on gold street.
18. On February 26, 2018 I was called into a meeting with Carty and Joyce Dupee, director of the department. Carty asked me if I had anything to say since I had so much to say on February 21, 2018. She said she could not allow me back on the floor until I could agree there would be no outbursts.
19. Dupee interjected that I had come in ten minutes late for the meeting.  She said I was not following protocol for requesting PTO time and needed to do it two weeks in advance of a date.
20. I told Dupee that Carty did not practice that and did not require it from others.
21. In the February 26, 2018 meeting, Dupee accused me of pushing her into Carty's office on February 1, 2018.

22. I did not push Dupee and this accusation had not been raised until February 26, 2018, nearly a month after the alleged incident.

23. I did request Dupee meet with Carty and me on February 1, 2018, but I did not push her into Carty's office.

24. On or about March 28, 2018, I was interviewed in the course of an investigation regarding a group photograph of department staff that Carty and another employee, Krista Rubino, had had their faces marked up or crossed out in the picture.

25. I felt the interviewer's questions were biased towards me when I was asked what my relationship was with Carty and whether I had issues with Carty.

26. I felt as if I was being accused of marking up the picture.

27. I left the office to speak to human resources and spoke with a representative named Lori (last name unknown). I was very upset and discussed numerous negative interactions with Carty since she became my supervisor. Barbara Escobar, human resources, came in and said this was not an appropriate forum for this.

28. Escobar told me to return to my work area.

29. I did and Carty called me to her office. She was asking me where I had been.

30. I was visibly upset and I excused myself.

31. Later, I got an invite to meet with her and declined it.

32. Carty insisted I meet with her that day and I explained I was not comfortable and that I really could not meet with her today, but I would meet with her the following day.

33. Later that day, she handed me an envelope with a written warning in it.

34. Carty said she wanted to give it to me face to face but I refused to meet with her.

35. The warning cited me for unsatisfactory performance, accused me of raising my voice and using profanity on February 26, 2018 and said I had been excessively tardy, was not following instructions or department policy for time off requests and that I had left my desk for forty-five minutes and then refused to explain where I had been.

36. This was retaliation for my having complained to Lori in human resources about my interactions with Carty which is where I had been for forty-five minutes.

37. On or about May 1, 2018 I spoke to the Office of Equal Opportunity about being targeted based on my race and color.

38. Carty had accused me of being angry, like the stereotypical angry black woman, and of staring at her in an intentional way of intimidation when I had only been actively listening to her when she was speaking to me.

39. Carty also spoke to me in a belittling way.

40. On May 9, 2018, a diagram was shown to staff at a meeting in the second phase of restructuring. (See Exhibit A)

41. My position was not noted and I questioned Dupee and was told I was not part of the meeting because I was not a certified coder.

42. From the first phase of reorganization, I was the only one left at Church Street South.

43. Profile variance team members were reassigned to George Street in September 2017. Clerical and technical staff was reassigned to George Street in April 2018.

44. On or about May 23, 2018 I spoke to Carty about another manager addressing me in an inappropriate manner.  Diana MacLennan had banged her fists on my desk and shouted at me. after meeting with Carty and MacLennan, I called the Office of equal opportunity and spoke with Johnathan bailey and was advise to speak with my supervisor  regarding concerns.

45. Carty justified MacLennan's behavior rather than addressing my issues.

46. On May 31, 2018 I was called in to a round table meeting with human resources. Two human resource generalists were present, Denise Jenkins and Escobar along with Carty and Dupee.

47. I was accused of not collaborating well with other teams in the practice. Carty said I had acted in appropriately in two meetings that took place on April 6 and 16, 2018.

48. I had not been spoken to regarding my alleged inappropriate behavior on April 6 or 16 prior to this meeting.

49. On or about June 14, 2018 I notified respondent of my pregnancy. I was then called in and terminated on June 18, 2018. (Exhibit B)

50. I believe my termination was based in whole or part on my race (African American), color (black), my sex (female and pregnancy and in retaliation for my complaints of unfair and discriminatory treatment.

51. Respondent intended to get rid of me before the new fiscal year and that is why my position was not represented on the reorganization diagram revealed to staff on May 9, 2018.

52. During my employment under the supervision of Carty, I was asked to prepare policy and procedures for my job duties.

53. Prior to the July 2017 reorganization, only I and my former supervisor knew how to complete the duties and functions of my position.

54. Carty had me draft policy and procedures so my duties could be reassigned to others and I could be eliminated.

55. I was the only African American professional left in the department at the time I was terminated.

56. I had actively been seeking an alternative position in the Orthopedics and Rehabilitation Department and had been to three interviews.  (see Exhibit C)

57. By terminating my employment, I was disqualified for hire in any other department within respondent's organization.

58. Notably, respondent did not challenge my eligibility for unemployment.

59. Respondent did not have a legitimate reason for terminating me.

60. My termination was based on discrimination and in retaliation for my opposition to discrimination in the workplace.

61. On June 29, 2018 I filed a complaint to the EEOC (SeeExhibit D).

62. On July 11, 2018 I received a response from EEOC and a scheduled intake visit for August 13, 2018 (See Exhibit  E).

63. On August 22, 2018 Affidavit if Illegal Discrinatory Practice filed Case no: 1930138 ( See Exhibit F).

64. On October 9,2018 I was informed Yale University was servered on Aug 27 2018 and requested a an extension. ( see exhibit G)
65. On November 9, 2018 I sent email with 6 attachments -with a response to Yale University allegations.See exhibit H)
66. On Jan 15, 2019 Mediation was scheduled ( See exhibit I)
67. In July 2019 I sent recordings to EEOC represtative as proof I was not angry or upset or Irate while dealing with the Supervisor Terry or Diriector Joyce. Additionally to show relevance to the fact finding proceedings ( see Exhibit J)
68. On September 17, 2019 Fact finding interview
69. December 3, 2019 Draft Summary presented by  EEOC. (see Exhibit K)
70. December 13, 2019 I sent a letter to refute the "no reasonable cause summary" and state why my recordings should be included in the facts of this case. (See exhibit L)
71. The first week of February I received a Dismissal and Notice of Rights letter  from the Boston office , letter dated 1/27/2020.(see Exhibit M)

# Exhibit A

**Update 4/3/2018 - Yale Medicine**
**Centralized Coding and Billing Structure**



# Exhibit B

# Exhibit C

# RE: Ortho Analyst Interview- Mary Henwood & Joanne Simiola

## Henwood, Mary <mary.henwood@yale.edu>

Wed 5/9/2018 1:44 PM

To: krystal Underhill <chi_chi106@hotmail.com>;

Thank you so much. we will be in touch. Mary

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Wednesday, May 9, 2018 12:56 PM
**To:** Henwood, Mary <mary.henwood@yale.edu>
**Subject:** Re: Ortho Analyst Interview- Mary Henwood & Joanne Simiola

---

**From:** Henwood, Mary
**Sent:** Tuesday, April 24, 2018 3:55 PM
**To:** Henwood, Mary; chi_chi106@hotmail.com; Simiola, Joanne
**Subject:** Ortho Analyst Interview- Mary Henwood & Joanne Simiola
**When:** Monday, April 30, 2018 2:15 PM-2:45 PM.
**Where:** 47 College Street, 2nd floor office of the Chair

# RE: Ortho

**Henwood, Mary <mary.henwood@yale.edu>**

Wed 5/23/2018 6:43 PM

To:krystal Underhill <chi_chi106@hotmail.com>;

Cc:Thomas, Fallon <fallon.thomas@yale.edu>;

Hi Krystal:

Can you come in for an interview on the 31st or the 1st? I would like you to meet some of our Business office staff. Also please let me know if it is OK to have you meet Johanna Hartigan at YM? thanks much. mary

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Wednesday, May 23, 2018 9:20 AM
**To:** Henwood, Mary <mary.henwood@yale.edu>
**Cc:** Thomas, Fallon <fallon.thomas@yale.edu>
**Subject:** Re: Ortho

Hi Mary

Yes i am still available , and thank you for contacting me back !!

thank you

Krystal

**From:** Henwood, Mary <mary.henwood@yale.edu>
**Sent:** Tuesday, May 22, 2018 11:38 PM
**To:** chi_chi106@hotmail.com
**Cc:** Thomas, Fallon
**Subject:** Ortho

Hi There
I hope you are doing well. I'm sorry for the delay in getting back to you again. We are still very interested in having you come back for an interview at Ortho. Are you still available? Please let me know if you want to chat. Thank you. Mary

Sent from my iPhone
Mary L. Henwood, MPH
Director Finance & Administration
Yale Orthopaedics & Rehabilitation (Interim) &

Yale Center for Musculoskeletal Care
Mobile/Text: 203-770-0813

# Exhibit D

Krystal Underhill

1029 Main Street

Stratford, Connecticut 06615

June 29, 2018

To Whom It May Concern:

I would like to file a complaint of Pregnancy and Racial discrimination against my former employer Yale University/ Yale Medicine.  In addition to the discriminatory practices I would like to file a complaint regarding the retaliatory practices of this office.  While in my role for 2017-2018 I have been harassed and retaliated against in succession without any help from Human resources.  On June 14, 2018 I filed a formal compliant with Yale Universities Equal opportunity office, in hopes I could get some help with the harassment and retaliation. Additionally I informed Human Resources I was pregnant and needed help with beginning paper work for FMLA, due to my issues with morning sickness as at the time.  I was told I would be assisted the next week. Monday of the next week I was terminated from my role at Yale Medicine.

I would like to provide further details with documents and recordings of behavior by the individuals involved.  Please accept this letter as the start of my compliant. Please advise of my next steps in this process.

Thank you

Krystal Underhill

# Exhibit E



**State of Connecticut**
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
West Central Region Office, 55 West Main Street, 2nd Floor, Suite 210, Waterbury, CT 06702

*Promoting Equality and Justice for all People*

July 11, 2018

Krystal Underhill
1029 Main Street
Stratford, CT 06615

### RE:  INTAKE APPOINTMENT

Dear Krystal Underhill

This will confirm the scheduling of your intake appointment for
**August 13, 2018**   @   2:00 in the   **ROWLAND STATE GOVERNMENT CENTER, 55 WEST MAIN STREET, SUITE 210, WATERBURY, CT  06702**.

Please arrive on time, as the intake appointment will last no more than two (2) hours and there are other appointments directly after your appointment.  In order to provide complainants with equal time for their matter, please be brief and plan to conclude your appointment within one (1) hour of commencing.  If you cannot keep this appointment, please notify the undersigned individual as soon as possible to reschedule.

Please be sure to bring **photo identification** or **your license** with you and this letter as you will be required to show identification when entering the building. There is a charge for parking on the green.   Thank you for your anticipated cooperation.

Commission on Human Rights and Opportunities
West Central Regional Office
Rowland State Government Center
55 West Main Street Suite 210
Waterbury, CT  06702

Encl.   Directions/Intake Checklist

# Exhibit F

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
**AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE**

DATE: 8/22/18                    CASE NO: 1930138

My name is
Krystal Underhill

and I reside at
1029 Main Street, Stratford, CT 06615

My email address is chi_chi106@hotmail.com

The respondent is
Yale University

whose business address is
100 Church Street South, New Haven, CT 06519

```
RECEIVED
STATE OF CONNECTICUT

AUG 2 2 2018

Comm. On Human Rights & Opportunities
WEST CENTRAL REGION
```

The alleged discrimination took place in
New Haven, CT

I was
(X) terminated                              ( ) not hired/not promoted
( ) suspended                               ( ) not rented a dwelling
( ) placed on probation                     (X) harassed  ( )sexually harassed
( ) demoted                                 ( ) earning a different rate of pay
(X) warned                                  ( ) constructively discharged
( ) given a poor evaluation                 (X) retaliated against
( ) denied a raise                          ( ) denied a reasonable accommodation
( ) less trained                            ( ) delegated difficult assignments
( ) denied service (s)                      ( ) discriminated against in the terms/conditions
( ) other _____                      of employment

On June 18, 2018

and believe that my

(X) race                                    ( ) national origin
(X) color                                   ( ) marital status
(X) sex { }male {X}female                   ( ) physical disability
(X) previous opposition, filing,            ( ) intellectual disability
     testimony or assistance                ( ) mental disability
( ) ancestry                                ( ) religious creed    ( ) creed
( ) age __ DOB:              ( ) familial status

F103                                        Issued 4/94
                                            Revised 9/20/2011

( ) religion
(X) pregnancy
( ) alienage
( ) gender identity or expression
( ) other  _

( ) sexual orientation
( ) learning disability
( ) lawful source of income
( ) genetic information

was/were in part a factor/factors in this action/these actions.  I believe that the respondent violated the following statutes and acts listed below, as amended, enforced

through CONN. GEN. STAT. § 46a-58(a) if applicable:

(X) CONN. GEN. STAT. § 46a-60(b)(1)
(X) CONN. GEN. STAT. § 46a-60(b)(4)
( ) CONN. GEN. STAT. § 46a-60(b)(5)
(X) CONN. GEN. STAT. § 46a-60(b)(7)( )( )( )
( ) CONN. GEN. STAT. § 46a-60(b)(8)( )( )( )
( ) CONN. GEN. STAT. § 46a-64( )( )
( ) CONN. GEN. STAT. § 46a-64a( )( )( )
( ) CONN. GEN. STAT. § 46a-70
( ) CONN. GEN. STAT. § 46a-71
( ) CONN. GEN. STAT. § 46a-80 ( )
( ) CONN. GEN. STAT. § 46a-81( )( )( )
( )other_____

(X) Title VII of the Civil Rights Act of
1964, 42 U.S.C § 2000e-2
{cite for 15 individuals employed}
( ) Age Discrimination in Employment
Act of 1967, 29 U.S.C. §§ 621-634
{cite for over 20 individuals employed}
( ) Americans With Disabilities Act,
42 U.S.C. § 12101 et seq.
( ) Equal Pay Act of 1964, U.S.C. § 206
( ) Section 504 of the Rehabilitation Act
of 1973

I provide the following particulars:

1.  My name is Krystal Underhill and I reside at 1029 Main Street, Stratford, CT
    06615.
2.  The respondent is Yale University located in New Haven, CT.
3.  Respondent employs more than fifteen (15) employees.
4.  I began my employment with respondent in October 2015.
5.  My position was professional revenue analyst and my work location was on
    George Street in New Haven until in or about July 2017 when a reorganization
    took place.
6.  I was reassigned to an office located on Church Street South in New Haven
    within the medical coding and billing department. Management changed and I
    began reporting to Teresa Carty.
7.  In September 2017, I met with Carty to discuss concerns I had with the dynamics
    of the team and what my role was within the department.
8.  Prior to Carty becoming my supervisor, I had no documented performance or
    conduct issues as an employee.
9.  In early 2018, things became increasingly hostile in the department.
10. Carty accused me of being angry and accused me of staring at her.  When I
    denied I was staring at her and said I was listening to her, she argued that I was
    intentionally staring at her as a means of intimidating her.
11. On February 21, 2018 Carty called me in regarding personal time off (PTO)

Issued 4/94
Revised 9/20/2011

requests. Specifically, I had requested February 22 and 23, 2018 off because I had received surprise tickets for my birthday on February 21, 2018.

12. Carty said training was scheduled for the clerical and technical staff that she wanted me to participate in on those days.

13. I informed her I would take the time regardless of her approval.

14. She then said she would talk to the George Street office to see if the training could be done that day.

15. Carty said the training could happen that day and I explained I had another meeting.

16. She told me she would drag me there if need be.

17. She wanted me to walk over to George Street with her and I responded I knew how to get there.

18. On February 26, 2018 I was called into a meeting with Carty and Joyce Dupee, director of the department. Carty asked me if I had anything to say since I had so much to say on February 21, 2018. She said she could not allow me back on the floor until I could agree there would be no outbursts.

19. Dupee interjected that I had come in ten minutes late for the meeting. She said I was not following protocol for requesting PTO time and needed to do it two weeks in advance of a date.

20. I told Dupee that Carty did not practice that and did not require it from others.

21. In the February 26, 2018 meeting, Dupee accused me of pushing her into Carty's office on February 1, 2018.

22. I did not push Dupee and this accusation had not been raised until February 26, 2018, nearly a month after the alleged incident.

23. I did request Dupee meet with Carty and me on February 1, 2018 but I did not push her into Carty's office.

24. On or about March 28, 2018 I was interviewed in the course of an investigation regarding a group photograph of department staff that Carty and another employee, Krista Rubino, had had their faces marked up or crossed out in the picture.

25. I felt the interviewers questions were bias towards me when I was asked what my relationship was with Carty and whether I had issues with Carty.

26. I felt as if I was being accused of marking up the picture.

27. I left the office to speak to human resources and spoke with a representative named Lori (last name unknown). I was very upset and discussed numerous negative interactions with Carty since she became my supervisor. Barbara Escobar, human resources, came in and said this was not an appropriate forum for this.

28. Escobar told me to return to my work area.

29. I did and Carty called me to her office. She was asking me where I had been.

30. I was visibly upset and I excused myself.

31. Later, I got an invite to meet with her and declined it.

32. Carty insisted I meet with her that day and I explained I was not comfortable and that I really could not meet with her today, but I would meet with her the following day.

33. Later that day, she handed me an envelope with a written warning in it.

34. Carty said she wanted to give it to me face to face but I refused to meet with her.

35. The warning cited me for unsatisfactory performance, accused me of raising my voice and using profanity on February 26, 2018 and said I had been excessively tardy, was not following instructions or department policy for time off requests and that I had left my desk for forty-five minutes and then refused to explain where I had been.

36. This was retaliation for my having complained to Lori in human resources about my interactions with Carty which is where I had been for forty-five minutes.

37. On or about May 1, 2018 I spoke to the Office of Equal Opportunity about being targeted based on my race and color.

38. Carty had accused me of being angry, like the stereotypical angry black woman, and of staring at her in an intentional way of intimidation when I had only been actively listening to her when she was speaking to me.

39. Carty also spoke to me in a belittling way.

40. On May 9, 2018, a diagram was shown to staff at a meeting on a second phase of restructuring.

41. My position was not noted and I questioned Dupee and was told I was not part of the meeting because I was not a certified coder.

42. From the first phase of reorganization, I was the only one left at Church Street South.

43. Profile variance team members were reassigned to George Street in September 2017. Clerical and technical staff was reassigned to George Street in April 2018.

44. On or about May 23, 2018 I spoke to Carty about another manager addressing me in an inappropriate manner. Diana MacLennan had banged her fists on my desk and shouted at me. after meeting with Carty and MacLennan, I called the Office of equal opportunity and spoke with Johnathan bailey and was advise to speak with my supervisor regarding concerns.

45. Carty justified MacLennan's behavior rather than addressing my issues.

46. On May 31, 2018 I was called in to a round table meeting with human resources. Two human resource generalists were present, Denise Jenkins and Escobar along with Carty and Dupee.

47. I was accused of not collaborating well with other teams in the practice. Carty said I had acted in appropriately in two meetings that took place on April 6 and 16, 2018.

48. I had not been spoken to regarding my alleged inappropriate behavior on April 6 or 16 prior to this meeting.

49. On or about June 14, 2018 I notified respondent of my pregnancy. I was then called in and terminated on June 18, 2018.

50. I believe my termination was based in whole or part on my race (African American), color (black), my sex (female and pregnancy and in retaliation for my complaints of unfair and discriminatory treatment.

51. Respondent intended to get rid of me before the new fiscal year and that is why my position was not represented on the reorganization diagram revealed to staff on May 9, 2018.

52. During my employment under the supervision of Carty, I was asked to prepare policy and procedures for my job duties.

53. Prior to the July 2017 reorganization, only I and my former supervisor knew how to complete the duties and functions of my position.

54. Carty had me draft policy and procedures so my duties could be reassigned to

Issued 4/94
Revised 9/20/2011

others and I could be eliminated.
55. I was the only African American professional left in the department at the time I was terminated.
56. I had actively been seeking an alternative position in the Orthopedics and Rehabilitation Department and had been to three interviews.
57. By terminating my employment, I was disqualified for hire in any other department within respondent's organization.
58. Notably, respondent did not challenge my eligibility for unemployment.
59. Respondent did not have a legitimate reason for terminating me.
60. My termination was based on discrimination and in retaliation for my opposition to discrimination in the workplace.

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

Krystal Underhill, being duly sworn, on oath, states that s/he is the Complainant herein; that s/he has read the foregoing complaint and knows the content thereof; that the same is true of her/his own knowledge, except as to the matter herein stated on information and belief and that as to these matters s/he believes the same to be true.

Dated at _Waterbury_ , Connecticut this _22nd_ day of _August, 2018_

_K. Underhill_
(Complainant's Signature)

Subscribed and sworn to before me this _22nd_ day of _August_ , 20 _18_ .

_Kathleen Bonder Jarassini_
Notary Public/~~Commissioner of the Superior Court~~

My commission expires: _10/31/19_

Issued 4/94
Revised 9/20/2011

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☑ FEPA | |
| ☐ EEOC | |

State of Connecticut Commission on Human Rights & Opportunities — and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Krystal M. Underhill | 203 572 6486 | 2/21/81 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1029 Main Street | Stratford, CT 06615 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| Yale University / Yale Coding and Billing | | |

| Street Address | City, State and ZIP Code |
|---|---|
| 100 Church Street South | New Haven, CT 06519 |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|

DISCRIMINATION BASED ON (Check appropriate box(es).)

☑ RACE   ☑ COLOR   ☑ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☑ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☑ OTHER (Specify) *Pregnancy*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

FOR EEOC/CHRO USE ONLY

The particulars of this charge of discrimination are set forth in my complaint number _1930138_ Which I filed with the Connecticut Commission on Human Rights and Opportunities on _8/22/18_ and which are attached hereto and incorporated as if fully set forth herein.

RECEIVED
STATE OF CONNECTICUT

AUG 22 2018

Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

MCE: 10/31/19

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| | Kathleen Bowden Garassino |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 8/22/18   Date   *K. Underhill*   Charging Party Signature | K. Underhill SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) August 22, 2018 |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act

## NOTICE OF RIGHT TO REQUEST REVIEW

This notice is to inform you that the charge to which you are a party, filed with both the Connecticut Commission on Human Rights and Opportunities (CCHRO) and the federal Equal Employment Opportunity Commission (EEOC), will be processed by the CCHRO.

In accordance with the Commission's Procedural Regulations, the Commission will accept the CCRHO's final finding or resolution of the charge and adopt it as its own unless a party to the charge requests the EEOC to conduct a review of the CCHRO's final action.

To exercise this right you must submit your request for review, in writing, to the EEOC office at the following address within fifteen (15) days of the date on which you receive the CCHRO's notice of its final findings:

> **U.S. Equal Employment Opportunity Commission,**
> **Boston Area Office,**
> **John F. Kennedy Federal Building**
> **Government Center, Room 475**
> **Boston, MA 02203-0208**

If you have any questions concerning this notice or your right to request review, please contact this office.

## I ACKNOWLEDGE RECEIPT OF THIS NOTICE

_K. Underhill_
Signature of complainant

_8/13/2018_
Date

_____
Respondent's name

CCHRO Number: _____

EEOC Number:    _____

**COMPLAINANT'S WITNESS LIST**

CHRO No. _____

Date Filed: _8/13/2018_

Complainant: _Krystal Underhill_

Respondent: _____

_____

If this complaint is retained following a Case Assessment Review (CAR), I am identifying the following persons as relevant witnesses:

<u>Witness name, telephone # and address</u>                <u>Specific relevant information</u>

[✓] I have no witnesses at this time.

_K. Underhill_ _____
Complainant's Signature

_8/13/2018_ _____
Date

Case No.: _____        Date: 8/13/2018

Case Name:

## REMEDY WORKSHEET

In the event of a successful resolution of your case, the Connecticut Commission on Human Rights & Opportunities (the "Commission") may be able to negotiate for you monetary and non-monetary damages. Please make check marks (/) where applicable:

- ☑ back pay minus interim earnings (unemployment compensation, earnings from other jobs, etc.)
- ☑ reinstatement
- ☐ merit increase
- ☐ promotion
- ☐ training
- ☑ restoration of fringe benefits, including 401K, stock options, etc.
- ☐ accommodation
- ☑ cease and desist harassment
- ☐ policy change(s)
- ☐ change in performance evaluation
- ☑ expunge warnings from personnel file
- ☑ emotional distress damages
- ☐ other _____

Information necessary to calculate your damages (If you need more space, please attach additional sheets.):

1. Date of discharge/failure to hire/failure to promote: 6/18/18
2. Pay rate hourly: _____ weekly _____ annually: 74,000
3. Hours worked weekly: 37.5
4. Did you work overtime regularly: ☐ Yes ☑ No
   If Yes, how often and how many hours per week? _____
5. Other actual out-of-pocket expenses (medical, etc.) _____
6. Do you want to back to work for the respondent? ☐ Yes ☑ No
7. Please list other earnings since discharge: _____

If you have been discharged from employment, it is your duty to look for other work even if you have filed a charge of discrimination. You may be required to provide the Commission a record and evidence of your attempts to find work. Please keep accurate records of all such attempts. The Commission may require you to provide copies of various employment documents, which may include: W-2 forms, pay stubs or other documents showing pay history, or tax returns.

K. Underhill                                    8/13/18
Complainant's Signature                         Date

INFORMATION REGARDING COMPLAINTS PREVIOUSLY FILED WITH THE
CONNECTICUT COMMISSION ON HUMAN RIGHTS

CHRO No. _____

Please provide the following information:

☐        I have filed a previous complaint:

          Date of filings:     _____
          Regional Office:   _____
          Case Number:     _____
          Class Basis:        _____

☑        I have not filed a previous complaint.

I understand that my failure to disclose this information may lead to a delay in the
processing of my complaint or a dismissal of my complaint for failure to cooperate.

_____
Complainant Signature

8/13/18
_____
Date

# Exhibit G

**usa0543@fedex.com**

| | |
|---|---|
| **From:** | krystal Underhill <chi_chi106@hotmail.com> |
| **Sent:** | Friday, July 3, 2020 1:42 PM |
| **To:** | usa0543@fedex.com |
| **Subject:** | [EXTERNAL] Fw: CHRO complaint |

**From:** Westhaver, Suzanne <Suzanne.Westhaver@ct.gov>
**Sent:** Tuesday, October 9, 2018 9:52 AM
**To:** 'krystal Underhill' <chi_chi106@hotmail.com>
**Subject:** RE: CHRO complaint

# 1930138 It was served on August 27th. Answer is due 30 days following service and respondent can request one time 15 day extension.

# Looks like they made a request for extension and answer is due on October 11.

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Saturday, October 6, 2018 3:21 PM
**To:** Westhaver, Suzanne
**Subject:** Re: CHRO complaint

hi

has there been an update as of yet i have not heard anything back

**From:** Westhaver, Suzanne <Suzanne.Westhaver@ct.gov>
**Sent:** Friday, August 17, 2018 3:18 PM
**To:** 'krystal Underhill'
**Subject:** RE: CHRO complaint

Yes, but I need to have your signature on the EEOC charge form, too.  I have the forms you completed here but still need the signature.

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Friday, August 17, 2018 1:37 PM
**To:** Westhaver, Suzanne
**Subject:** Re: CHRO complaint

hi

thank you

I can print it here and go to the bank and have it notarized , and bring it up to you some time next week .. let me know if that's ok

---

**From:** Westhaver, Suzanne <Suzanne.Westhaver@ct.gov>
**Sent:** Wednesday, August 15, 2018 1:18 PM
**To:** 'krystal Underhill'
**Subject:** RE: CHRO complaint

Your revised affidavit is attached.  When can you come in to sign the documents so your claim is filed? I want to be sure I have someone here to notarize when you arrive.

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Wednesday, August 15, 2018 12:08 PM
**To:** Westhaver, Suzanne
**Subject:** Re: CHRO complaint


Hi
can you add the following corrections:

#43. Profile variance Team
#44. after meeting with terry and Diana I called Office of equal opportunity spoke with Johnathan bailey and was advise to speak with my supervisor  regarding concerns
#46. may 31, 2018

---

**From:** Westhaver, Suzanne <Suzanne.Westhaver@ct.gov>
**Sent:** Tuesday, August 14, 2018 12:00 PM
**To:** 'chi_chi106@hotmail.com'
**Subject:** CHRO complaint

Ms. Underhill,

Attached is the affidavit I prepared based on our meeting yesterday.  Please review it and make any edits and/or additions necessary.

You can send it back to me and we can arrange to have you come in and sign all the documents necessary to file your claim.

Please be aware this is time sensitive. Your deadline for filing is December 15, 2018 based on the date of your termination.

Regards,

2

Suzanne Westhaver
Human Rights Representative
Commission On Human Rights And Opportunities
55 West Main Street Suite 210
Waterbury, CT 06702
P: 203-805-6541
F: 203-805-6559
E:  Suzanne.westhaver@ct.gov

# Exhibit H

**usa0543@fedex.com**

| | |
|---|---|
| **From:** | krystal Underhill <chi_chi106@hotmail.com> |
| **Sent:** | Friday, July 3, 2020 1:44 PM |
| **To:** | usa0543@fedex.com |
| **Subject:** | [EXTERNAL] Fw: Underhill v. Yale #1930138 |
| **Attachments:** | list of employees reassign not terminated.pdf; may 9 diagram.pdf; reference letter from paula.pdf; kmujournal5 .docx; email from ortho interview.pdf; April 30 exchange with Donna Lockwood.docx |
| | |
| **Importance:** | High |

**From:** krystal Underhill <chi_chi106@hotmail.com>
**Sent:** Friday, November 9, 2018 7:52 PM
**To:** Gilmore, Denise <denise.gilmore@yale.edu>; Mota, Susan <Susan.Mota@ct.gov>
**Cc:** Martinez Cecchini, Vannesa <vannesa.martinez@yale.edu>
**Subject:** Re: Underhill v. Yale #1930138

 To whom it may Concern:
The information portrayed about  my character as an employee of yale University is not true. an example of myself would show every person i worked with from management to staff or other coworkers all have PINK roses on their desk which i have given to staff at RIA department and Yale Coding and Billing during the Christmas holiday just to show LOVE to the people i worked with.

In response to the allegations by yale University . Please see the attached  as evidence

- reference letter
- a list of coworkers who have been effected by the reorganization, they were reassigned and not fired
- kmu journal5 and may 9 diagram (shows my role was never included in the coding and billing dept prior to June 18)
- emails from ortho department- proof of the my interview process
- April 30 exchange with Donna Lockwood was not negative or hostile as stated in the response .
- please see additional evidence via email

**From:** Gilmore, Denise <denise.gilmore@yale.edu>
**Sent:** Thursday, October 11, 2018 9:00 AM
**To:** Mota, Susan; chi_chi106@hotmail.com
**Cc:** Martinez Cecchini, Vannesa
**Subject:** Underhill v. Yale #1930138

Good Morning,
Attached please find Respondent's response in the above-captioned matter. Thank you.

8. As part of Reorganization Project several people were re-assigned to different departs or Laid off not Terminated

1. Melissa Manisculco was a team Manager and was also move to other team as part of profile variance

2. Diana McHearan was an auditor and moved to Yale Coding and Billing and then promoted to Coding and Billing Manager.

3. Krista Rubino an Analyst in R.I.A and moved to Yale Coding and Billing

4. Robin Mason Laid off

5. Krista Davis laid off - rehired by another Dept.

**Update 4/3/2018 - Yale Medicine**
**Centralized Coding and Billing Structure**



Yale Medicine

P.O. Box 7309
New Haven, CT 06519-0309

June 28,2017

**Recommendation for Krystal Underhill**

I have known Krystal Underhill for the past two years while she has worked as a Professional Revenue Analyst in our Systems Department of Yale Medicine. I have been consistently impressed by both Krystal's attitude towards her work and her performance on the job.

Her interpersonal and communication skills have allowed her to develop productive working relationships with colleagues and leaders from other areas of the organization as well as other team members in the Systems Department. In her current role she also is the primary person maintaining the vendor relationship with our clearinghouse. The vendor respects her knowledge and has acknowledged her skill and professionalism as well.

Krystal has a solid medical billing foundation, with both hospital and physician billing experience, and works diligently at trending and analyzing data. She prepares and presents solid proposals to solve repetitive transactional defects she detects and works comfortably in a team to bring a resolution from conception to completion. Her ability to remain unflustered during frenzied periods, such as unexpected high volume or new claim edits or denials, proves her ability to work well under pressure.

Krystal possesses solid writing skills which have enabled her to compose quality correspondence.

I recommend Ms. Underhill for employment without reservation.

Please let me know if you need further information.

Respectfully,

*Paula Palmieri-Grimm*

Paula Palmieri-Grimm,
Yale Medicine
Systems Manager, Revenue Integrity and Analytics
203.737.2860
Paula.palmieri-grimm@yale.edu

or at 860.978.1480
ppgrimm@cox.net

- May 9 – Ask Joyce why I wasn't reflected in the reorganization diagram Only Diana M and Krista R. showed…
- Joyce stated I wasn't invited to the meeting and this was for CPC Only.
- Michelle Dorey, " said well maybe her name got crossed
- Joyce said No I did the invite and I did not  include her
- I said I'm an M&P and what will be my role.
- Joyce said I was payor support and you don't have a CPC
- Terry jumped in and said we will talk about it later

There was never any further discussion until 05/31/2018

# RE: Ortho Analyst Interview- Mary Henwood & Joanne Simiola

## Henwood, Mary <mary.henwood@yale.edu>

Wed 5/9/2018 1:44 PM

To: krystal Underhill <chi_chi106@hotmail.com>;

Thank you so much. we will be in touch. Mary

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Wednesday, May 9, 2018 12:56 PM
**To:** Henwood, Mary <mary.henwood@yale.edu>
**Subject:** Re: Ortho Analyst Interview- Mary Henwood & Joanne Simiola

---

**From:** Henwood, Mary
**Sent:** Tuesday, April 24, 2018 3:55 PM
**To:** Henwood, Mary; chi_chi106@hotmail.com; Simiola, Joanne
**Subject:** Ortho Analyst Interview- Mary Henwood & Joanne Simiola
**When:** Monday, April 30, 2018 2:15 PM-2:45 PM.
**Where:** 47 College Street, 2nd floor office of the Chair

# RE: Ortho

### Henwood, Mary <mary.henwood@yale.edu>

Wed 5/23/2018 6:43 PM

To: krystal Underhill <chi_chi106@hotmail.com>;

Cc: Thomas, Fallon <fallon.thomas@yale.edu>;

Hi Krystal:

Can you come in for an interview on the 31st or the 1st? I would like you to meet some of our Business office staff. Also please let me know if it is OK to have you meet Johanna Hartigan at YM?  thanks much. mary

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Wednesday, May 23, 2018 9:20 AM
**To:** Henwood, Mary <mary.henwood@yale.edu>
**Cc:** Thomas, Fallon <fallon.thomas@yale.edu>
**Subject:** Re: Ortho

Hi Mary

Yes i am still available , and thank you for contacting me back !!

thank you

Krystal

**From:** Henwood, Mary <mary.henwood@yale.edu>
**Sent:** Tuesday, May 22, 2018 11:38 PM
**To:** chi_chi106@hotmail.com
**Cc:** Thomas, Fallon
**Subject:** Ortho

Hi There
I hope you are doing well. I'm sorry for the delay in getting back to you again. We are still very interested in having you come back for an interview at Ortho. Are you still available? Please let me know if you want to chat. Thank you. Mary

Sent from my iPhone
Mary L. Henwood, MPH
Director Finance & Administration
Yale Orthopaedics & Rehabilitation (Interim) &

Yale Center for Musculoskeletal Care
Mobile/Text: 203-770-0813

## FW: Ortho

**Henwood, Mary** <mary.henwood@yale.edu>

Thu 5/24/2018 6:18 AM

To: Thomas, Fallon <fallon.thomas@yale.edu>;

Cc: krystal Underhill <chi_chi106@hotmail.com>;

HI Fallon, can you assist me in setting up an interview with Joanne and Johanna Hartigan for next Thursday? Krystal do you mind resending your resume? Once we took down and then reposted the position I did lose the copy. Thank you.

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Wednesday, May 23, 2018 9:53 PM
**To:** Henwood, Mary <mary.henwood@yale.edu>
**Subject:** Re: Ortho

hi mary


yes the 31st is fine

---

**From:** Henwood, Mary <mary.henwood@yale.edu>
**Sent:** Wednesday, May 23, 2018 6:43 PM
**To:** krystal Underhill
**Cc:** Thomas, Fallon
**Subject:** RE: Ortho

Hi Krystal:

Can you come in for an interview on the 31st or the 1st? I would like you to meet some of our Business office staff.  Also please let me know if it is OK to have you meet Johanna Hartigan at YM?  thanks much. mary

**From:** krystal Underhill [mailto:chi_chi106@hotmail.com]
**Sent:** Wednesday, May 23, 2018 9:20 AM
**To:** Henwood, Mary <mary.henwood@yale.edu>
**Cc:** Thomas, Fallon <fallon.thomas@yale.edu>
**Subject:** Re: Ortho


Hi Mary

Yes i am still available , and thank you for contacting me back !!


thank you

Krystal

---

**From:** Henwood, Mary <mary.henwood@yale.edu>
**Sent:** Tuesday, May 22, 2018 11:38 PM
**To:** chi_chi106@hotmail.com
**Cc:** Thomas, Fallon
**Subject:** Ortho

Hi There
I hope you are doing well. I'm sorry for the delay in getting back to you again. We are still very interested in having you come back for an interview at Ortho. Are you still available? Please let me know if you want to chat. Thank you. Mary

Sent from my iPhone
Mary L. Henwood, MPH
Director Finance & Administration
Yale Orthopaedics & Rehabilitation (Interim) &
Yale Center for Musculoskeletal Care
Mobile/Text: 203-770-0813

- On April 30, 2018 I was scheduled for a meeting with Terri Carty, Sally T, and several supervisors from Sally T staff as a "collaboration" meeting. The meeting was to show the other Supervisors and staff how to handle my morning process.
- After the meeting I stop to speak to a coworker, on my walk from the office, I wanted to stop and say hello to the C&T staff who had just left from my area I had not seen them in a while. I thought it would be nice to say hi.
- Not aware of their location as I was walking out, I say Donna Lockwood and I stop to speak with her, Shawn Web was out, and Donna Grossman was not at her desk. I asked if this is where they were placed. She said yes, and the seating was based on Seniority. I said ok and we talk for a short while. as I was speaking with Donna Lockwood, I saw Patti M. I did not want Patti to assume I was disturbing her staff, I told donna L it was nice seeing her and I would talk to her later.  There was nothing negative which occurred in the exchange with Donna Lockwood. As it was stated in the respondents document.

# Exhibit K

**State of Connecticut**
**COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES**
West Central Region Office, 55 West Main Street, 2nd Floor, Suite 210, Waterbury, CT 06702
*Promoting Equality and Justice for all People*

December 3, 2019

Krystal Underhill
1029 Main Street
Stratford, CT  06615


**SUBJECT:**   *TRANSMITTAL OF DRAFT SUMMARY OF NO REASONABLE CAUSE*
           *CHRO NO.: 1930138 Underhill vs. Yale University*
           *EEOC NO.: 16A201900034*

           **(x ) Finding of No Reasonable Cause**
           **( ) Administrative Dismissal - Lack of Jurisdiction**

**Dear Complainant:**

Transmitted herewith is a <u>draft summary</u> of <u>No Reasonable Cause </u>. Prior to final action, I am providing you with an opportunity to comment.  You have <u>fifteen calendar days</u> to provide me with any written comments concerning the draft summary.  During this fifteen (15) day period you may also review materials in the case file.  Unless I hear from you within this period, final investigative action will occur on  **DECEMBER 18, 2019.**  You may consult with or retain an attorney.  However, such consultation or retention will not extend the period of time for comment beyond the period of time noted above.  Nor will such consultation with or retention of an attorney alter the period of time for reconsideration established by regulation or the statutory period for appeal.

If you do submit comments, they will be reviewed and considered.  However, if your comments do not rebut the substance of the summary or present new evidence that requires further investigation, the draft summary will be finalized.

**State of Connecticut**

# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

West Central Region Office, 55 West Main Street, 2nd Floor, Suite 210, Waterbury, CT 06702

*Promoting Equality and Justice for all People*

Additionally, if you submit written comments you must send a copy of the comments to the opposing party and sign the certification of mailing form attached hereto, and return it to the Commission.

Sincerely,

Shawn Burns, Regional Manager
West Central Region

**Enclosure:   Draft Summary**

Vannesa Martinez, Associate General Counsel
Office of the Vice President and General Counsel - Yale University
P.O. Box 208255
New Haven, CT  06520

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES



## DRAFT FINDING OF NO REASONABLE CAUSE

<u>Krystal Underhill</u>
COMPLAINANT

VS.

<u>Yale University</u>
RESPONDENT

CHRO CASE NO:   1930138                    DATE FILED:  08/22/2018
EEOC NO:   16A201900034                    DATE FILED:  08/22/2018

## PARTIES

**COMPLAINANT:**
Krystal Underhill
1029 Main Street
Stratford, CT 06615

**COMPLAINANT'S REPRESENTATIVE:**
n/a

**RESPONDENTS:**
Yale University
100 Church Street South
New Haven, CT 06519

**RESPONDENT'S REPRESENTATIVE:**
Vanessa Martinez-Cecchini
Associate General Counsel
Office of the Senior Vice President and General Counsel
2 Whitney Avenue, 6th floor
New Haven, CT 06520-855.

## JURISDICTION

☒      The investigator concludes that the Commission has jurisdiction to receive, investigate and issue a determination upon the merits of this complaint.

☐      The investigator concludes that the Commission does not have jurisdiction to receive, investigate and issue a determination upon the merits of this complaint.   Therefore this complaint is dismissed due to the following:

## FINDINGS OF FACT

1.   The complainant, Krystal Underhill, is a an African American and Black who was pregnant at the time of her termination and is alleging she was subjected to a hostile work environment and retaliation and terminated based upon her protected status.

2.   Respondent Yale University hereinafter "Respondent", is located in New Haven, Connecticut.

3.   Respondent employs more than fifteen (15) employees.

4.   Complainant filed a complaint affidavit with the Commission on Human Rights and Opportunities on August 22, 2018 alleging she had been warned, harassed, retaliated against and terminated based upon her race (African American), color (Black), sex (female), pregnancy and previous opposition to discrimination.

5.   Complainant was hired on October 12, 2015 and was employed as a Professional Revenue Analyst.

6.   In July 2017, the department in which complainant was employed was restructured and all of its employees were relocated to new work locations and new supervisors. Teresa Carty, Associate Director of Coding and Billing (white-race and color, not pregnant) was assigned to supervise the Claim Edit Team, including complainant.

7.   In September 2017, Carty introduced complainant at a meeting with the intent of letting the group know complainant's job duties. After the meeting, complainant followed Carty into her office and chastised her for putting her on the spot at the meeting. Complainant disputes that the incident happened as described.

8.   Carty describes situations in which she attempted to have conversations with complainant where complainant would give no verbal response; rather, complainant would stare at her in an intimidating manner. Complainant describes the staring as "listening".

9.   Over the course of her employment, Carty counseled complainant for inappropriate behavior, excessive tardiness and refusal to participate in team oriented discussions.

10. On February 1, 2018, complainant acted aggressively toward Joyce Dupree, Director of Coding and Billing (white-race and color, not pregnant) and Carty. Although complainant eventually calmed down, when she returned to her work area, she used profanity and threw things around her desk area.  Complainant's co-workers reported to Carty and Dupee their discomfort and feeling unsafe working with complainant because of her aggressive behavior.

This was not the only reporting by complainant's co-workers/ staff members of similar behavior exhibited by complainant.

11. On February 21, 2018, complainant asked for two personal days. At first, Carty said no because complainant was not following protocol in requesting personal time two weeks in advance and trainings were scheduled on said dates. Complainant replied that she was taking the days off regardless of whether Carty authorized the personal days. Carty ultimately approved the time and rescheduled trainings so that complainant could take the two personal days she requested.

12. At a meeting on February 26, 2018, Dupee and Carty confronted complainant about her conduct on February 1, 2018. Complainant disputes that the February 1, 2018 incident happened as described.

13. On March 28, 2018, complainant failed to comply with a request that all staff be available at their workstations between 8:30 a.m.-10:30 a.m. for an interview. Complainant did not arrive until 9:10 a.m. After her interview, complainant grabbed her belongings and left the work site for approximately 45 minutes without notifying Carty and then refused to discuss her whereabouts when she returned. Rather, she told Carty: "you need to schedule a time to meet with me'". When Carty attempted to schedule a meeting, complainant declined the Outlook meeting proposal.

14. On March 28, 2018, complainant received a written warning regarding the aforementioned conduct as well as for inappropriate behavior, excessive tardiness and refusal to participate in team oriented discussions with other departments. Complainant was  placed on notice that failure to improve her conduct would result in further discipline up to and including termination

15. On April 6, 2018, complainant went to Carty's office and pounded loudly on her door disturbing her meeting. When complainant entered the office, she raised her voice because she believed Carty had rescheduled a meeting to a different time without notice to her. Carty assured her the time of the meeting had not been changed and showed her the Outlook invitation for 2:00 p.m.

At 2:00 p.m., the scheduled meeting time, Carty informed complainant the meeting was her opportunity to discuss her concerns but complainant refused to engage in any meaningful discussion. Eventually, Carty told complainant she was ending the meeting because complainant would not engage with her.

16. On May 1, 2018, complainant contacted Jonathan Bailey, Equal Opportunity Support Specialist for respondent's Office for Equal Opportunity Programs (OEOP) (African American, brown) regarding issues she was having with her manager in which she claimed her manager did not like her, she was not being treated professionally, she did not agree with the way her manager was restructuring the department and she did not like the work she was given. Complainant did not articulate any facts to suggest the issues with her manager were based upon discrimination rather than based upon communication issues between them; therefore, Bailey did not consider complainant's concerns required OEOP's further involvement.

17. On May 7, 2018, Carty and Diana McLennan, a Coding and Billing Manager (white-race and color, not pregnant) had a meeting with complainant. The meeting was intended to be a cooperative discussion and review of possible improvements to their process. Complainant was evasive in her answers in that she repeatedly told MacLennan to check the system herself. When pressed further for information by McLennan or Carty, complainant did not respond and simply stared at them. MacLennan ended the meeting and told complainant she was being uncooperative and disrespectful.

18. After such meeting, Carty determined that further discipline of complainant was needed and she was recommending termination; therefore, a fact finding conference with respondent human resources was scheduled for May 31, 2019 to address complainant's inappropriate behavior during meetings, detail a pattern of unacceptable behavior and discuss further discipline, up to and including termination.

19. On May 23, 2018, complainant contacted Bailey again. Complainant described her disagreement with the work that was being allocated to her and her dislike as to how her manager communicated with her. Bailey suggested that the upcoming meeting with HR and her supervisors would be an appropriate forum to voice her concerns.

    During such conversation, complainant shared her pregnancy with Bailey but it was not stated as the reason she was having issues with her manager. Bailey did not communicate complainant's pregnancy with her supervisors or human resources.

20. On May 30, 2018. Dupee, Carty, Denise Jenkins, respondent Human Resource Associate, (white-race and color, not pregnant) and Barbara Escobar, respondent Human Resource Generalist (white-race and color, not pregnant) met with complainant. Jenkins describes complainant as being aggressive and disrespectful in the fact-finding meeting. Escobar claims complainant did not want to answer a question about tardiness posed by Carty and, instead, complainant just stared at her. Escobar told complainant she needed to answer the question. Complainant then asked: "If my manager wants to talk about the weather, do I need to talk to her?"

Both Human Resource representatives testified that the decision to terminate complainant was made after witnessing complainant's disrespect toward Carty at the meeting.

21. Complainant disputes Carty's allegations that during interactions with her, she frequently stared at Carty in an intense and intimidating manner; however, Dupee and Jenkins also testified to either experiencing or witnessing said conduct.

22. Respondent wanted to inform complainant in person that she was terminated.  On June 14, 2018, Dupee sent complainant an email stating a meeting was scheduled that afternoon to "close the loop on the conversation we had with HR a week or so ago". At 9:58 a.m., complainant sent an email to Carty: "Im (sic) vomiting everywhere. I'm sick I left for the day".

Complainant appeared at the rescheduled June 18, 2018 meeting but she walked out of the meeting and refused to have any further discussion.

Complainant's termination letter was mailed to her.

23. On June 14, 2018, complainant forwarded Bailey an email which she had sent to Jenkins. Bailey forwarded the email to another OEOP representative. On June 18, 2108, complainant forwarded a letter to Bailey that she had sent to a third party stating that it was not fair that a mother of two had been terminated.

24. Respondent provided legitimate non-discriminatory reasons for reprimanding and ultimately terminating complainant. After receiving a written warning in March 2018, complainant continued to exhibit inappropriate behaviors and failed to demonstrate immediate and sustained improvement despite being placed on notice that such failure would result in further discipline up to and including termination.

25. Complainant was not subjected to a hostile work environment nor was she subjected to retaliation.

26. Complainant was terminated for her continued unprofessional and insolent conduct and not because of any protected class basis.

27. Complainant never provided respondent official notice of her pregnancy. Complainant noted in an email on June 14, 2018 that she was vomiting but she did not provide any specific reason for her sickness. Although it is unclear who knew or suspected complainant was pregnant at the time of her termination, the decision to terminate her occurred prior to such date and, regardless, complainant's pregnancy was not the basis for her termination.

28. Complainant disputes the testimony of respondent's witnesses claiming that she is the only credible witness; however four witnesses provided similar experiences of

witnessing complainant's disrespect, uncooperativeness and unresponsiveness toward Carty or them.

29. Based on this investigator's review of the case file and the testimonies of complainant, Joyce Dupree, Director of Coding and Billing, Teresa Carty, Associate Director of Coding and Billing, Barbara Escobar. Human Resource Generalist, Denise Jenkins, Human Resource Associate and Jonathan Bailey, Equal Opportunity Support Specialist, the undersigned investigator finds the record falls short of providing a factual basis for inferring that respondent discriminated against complainant based upon a legally protected class basis, including complainant's race, color, sex, pregnancy or previous opposition to discrimination or that she was subjected to retaliation.

## DETERMINATION

After reviewing all of the evidence in the Commission's file, the investigator concludes that there is **no reasonable cause** for believing that a discriminatory practice has been or is being committed as alleged in the complaint.

Dated and entered this 26th day of November, 2019.

COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES

Gene Cohen
Investigator

# Exhibit L

Krystal Underhill

1029 Main Street

Stratford, CT 06615

December 16, 2019

To Whom It May Concern:

This letter is to refute the allegations made by Yale University. This letter represents my comments, to the "no reasonable cause" summary. Along with my initial affidavit filed on August 22, 2018. The summary has disregarded my claims in which my protected class has been violated, and I was terminated because of my protected class, sex and pregnancy.

Additionally this summary does not address the retaliation which took place while employed at Yale University and performed at the hand of Teresa Carty Here are few examples:

1. I file a complaint to HR on 3/28/2018 regarding Teresa Carty
2. On 3/28/2018 the same day I was given a written warning
3. On May 23 or 24 I made a complaint to Equal Opportunity office   and given advice to speak with Teresa Carty regarding my concerns
4. In retaliation to May conversation with Carty  I was brought into a round table on May 31,2018

In succession from Feb of 2018 to May 2018 there was a fast track to get me removed by the new fiscal year. **Moreover, this summary does not address the repeated request to have my recordings submitted for the fact finding record.**

Additionally I have requested the witnesses presented in Yale's affidavit and witness statements be part of the fact finding to speak to what they claim in these letters.

Lastly, the replacement for the position I have held is not part of my protected class, in which violates EEOC and shows discrimination on the part of Yale University. This also proves there is reasonable cause to move forward with this case.

Thank you

Krystal Underhill

COMPLAINANT'S CERTIFICATION OF MAILING FORM

Case No.: _1930138_

Complainant: _Krystal Underhill_

Respondent: _Yale University_

I certify that a copy of these materials was sent to the following person(s) on:

_Dec. 16, 2019_
Date

☐ Hand Delivered
☑ Mailed
☑ Other _scanned & emailed_
(specify)

**RESPONDENT OR RESPONDENT'S ATTORNEY'S ADDRESS**

_Vannessa Cecchini_
Name

_P.O. Box 208255_
Street

_New Haven, CT 06520_
City, State, Zip Code

_K. Underhill_
Name

_12/16/19_
Date

# Exhibit M

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Krystal Underhill<br>1029 Main Street<br>Stratford, CT 06615 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>15 New Sudbury Street, Room 475<br>Boston, MA 02203 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 16A-2019-00034 | Amon L. Kinsey, Jr.,<br>Supervisory Investigator | (617) 565-3189 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Feng An, Kenneth*                                   JAN 2 7 2020

| Enclosures(s) | **Feng K. An,**<br>**Area Office Director** | (Date Mailed) |

cc:

**YALE UNIVERSITY**
**100 Church Street**
**New Haven, CT 06519**

Enclosure with EEOC
Form 161 (11/16)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law.</u>*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be

## IN THE STATE OF CONNECTICUT

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a lawsuit.

### WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. A lawsuit can be filed at the following U.S. District Court locations in Connecticut:

- The United States District Courts for the District of Connecticut are located at:

  o The Abraham Ribicoff Federal Building, 450 Main Street, Hartford, Connecticut 06103, or by contacting the Clerk of the Court Office at (860) 240-3200
  o 141 Church St., New Haven, Connecticut 06510, or by contacting the Clerk of the Court Office at (203) 773-2140
  o The Brien McMahon Federal Building, 915 LaFayette Blvd., Bridgeport, Connecticut 06604, or by contacting the Clerk of the Court Office at (203) 579-5861
  o 14 Cottage Place, Waterbury, Connecticut 06702, or by contacting the New Haven Clerk of the Court at (203) 773-2140

### WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit must be filed in U.S. District Court within 90 days of the date you receive the enclosed final action. Once this 90 day period is over, unless you have filed suit, you will have lost your right to sue.

### DO I NEED A LAWYER?

No, you do not need a lawyer to file a private suit. You may file a complaint in federal court without a lawyer which is called a *pro se* complaint. Every district court has either a clerk or staff attorney who can assist you in filing *pro se*. To find out how to file a *pro se* complaint, contact the clerk of the court having jurisdiction over your case who can advise you of the appropriate person to assist you and of the procedures to follow, which may vary from district to district.

You may, however, wish to retain a lawyer in order to adequately protect your legal rights. Whether you retain a private attorney, or file *pro se*, you must file your suit in the appropriate court within 90 days of receiving this mailing.

### WHAT IF I WANT A LAWYER BUT CAN'T AFFORD ONE?

If you can't afford a lawyer the U.S. District Court which has jurisdiction may assist you in obtaining a lawyer. You should consult with the office of the district court that assists *pro se* complainants for specific instructions on how to seek counsel.

Generally, the U.S. District Court charges a $350.00 filing fee to commence a lawsuit. However the court may waive the filing fee if you cannot afford to pay it. You should ask the office of the District Court that assists *pro se* complainants for information concerning the necessary procedure to request that the filing fee be waived.

### HOW CAN I FIND A LAWYER?

These are several attorney referral services operated by bar or other attorney organizations which may be of assistance to you in finding a lawyer to assist you in ascertaining and asserting your legal rights:

| | |
|---|---|
| American Bar Association | (312) 988-5522 |
| The Connecticut State Bar Association | (860) 223-4400 |
| National Employment Lawyers Association Referral Service | (212) 819-9450 |

Your County, City of Municipal Lawyers or Bar Association may also be of assistance.

### HOW LONG WILL THE EEOC RETAIN MY CASE FILE?

Generally, the Commission's rules call for your charge to be destroyed after 2 years from the date of a no cause determination or six months after other types of final actions. If you file a suit, and wish us to retain your file for more than the normal retention period, you or your attorney should forward a copy of your court complaint to this office within 10 days after you file suit. IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD ALSO NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.